IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs June 26, 2018

**STATE OF TENNESSEE v. KELLY SCOTT HOOD**

**Appeal from the Criminal Court for Cumberland County
Nos. 13-0073, 13-343, 14-103    David A. Patterson, Judge**

_____

**No. E2017-02166-CCA-R3-CD**

_____

The Defendant, Kelly Scott Hood, appeals the Cumberland County Criminal Court's order revoking his probation for his aggravated burglary, theft, and attempted theft convictions and ordering him to serve the remainder of his effective eight-year sentence in confinement. The Defendant contends that the trial court abused its discretion by revoking his probation. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and CAMILLE R. MCMULLEN, J., joined.

Craig P. Fickling, District Public Defender, and Ellie B. Putman, Assistant District Public Defender, for the appellant, Kelly Scott Hood.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Counsel; Bryant C. Dunaway, District Attorney General; and Philip Hatch, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On March 24, 2014, the Defendant was convicted of aggravated burglary, theft, and attempted theft and received consecutive sentences of three years, three years, and two years, respectively, to be served on probation. On November 10, 2016, the trial court determined that the Defendant violated the conditions of his release, revoked his probation, and ordered him to serve six months in jail before being returned to probation on February 1, 2017. The court ordered, though, that the Defendant be supervised by community corrections. On March 10, 2017, a violation report alleged that on February 4, 2017, the Defendant tested positive for Oxycodone and admitted using marijuana and "pills while in jail custody." The report also alleged that on February 22, 2017, the Defendant submitted to a drug screen and

that the sample was diluted. On March 10, 2017, an arrest warrant was issued. A July 21, 2017 amended warrant alleged that on July 13, 2017, the Defendant submitted to a drug screen and that the sample was diluted.

At the revocation hearing, community corrections officer Rebecca Davis testified that the Defendant initially received probation, that he violated the conditions of his release, that he pleaded guilty to violating his probation on November 10, 2016, that his probation was revoked, and that community corrections began supervising him on February 1, 2017, after he served six months in confinement. Ms. Davis said that during her supervision, the Defendant had been difficult to contact and had difficulty complying with the conditions of his release. She said that on February 4, the Defendant was released from confinement after completing the necessary documents for community corrections supervision, that the Defendant admitted using marijuana and "pills" during his six-month confinement, and that a drug screen showed the presence of "Oxycodone/Noroxycodone."

Ms. Davis testified that the Defendant was not home for a couple of home visits and that on February 22, 2017, the Defendant underwent a second drug screen, which showed a diluted specimen. She said that on July 13, the Defendant underwent another drug screen, which showed an "abnormally diluted . . . specimen."

On cross-examination, Ms. Davis testified that the Defendant admitted smoking marijuana and ingesting "pills" before he underwent the first drug screen. She agreed she did not obtain a violation warrant after he failed the February 4 drug screen and said they discussed rehabilitation after the Defendant requested help for addiction. She said that Officer Camden Davis with the city police department observed the Defendant's second drug screen, which occurred at the Defendant's home. She stated that the July 13 drug screen occurred in a bathroom at the sheriff's department and that the Defendant was monitored by Investigator Green.

On redirect examination, Ms. Davis testified that she associated a diluted specimen with having "something to hide" or having "sweated and sweated . . . and drank water and Gatorade and hard labor."

The Defendant testified that he did not know why the second sample was diluted. He said that after his first positive drug screen, his community corrections officer instructed him to "clean [his] system out and do what [he] needed to do in order to make sure that [he] was clean when she returned" for a subsequent drug screen. He said he complied with her instructions because he did not want to violate his release and go to prison for eight years. He denied using drugs between the first and second drug screens. He said that Officer Davis searched him and watched him provide the urine sample while other officers searched the home.

-2-

The Defendant testified that he did not know why the sample for the third drug screen was diluted. He recalled having kidney problems before the July 13 drug screen and said that he was treated at a hospital. He thought the diagnosis was kidney stones but was uncertain. He could not recall the dates but said he could obtain the medical records, if necessary. He said he was prescribed medication and drank plenty of fluids as directed by his physician.

The Defendant addressed the trial court as follows:

> I'd like . . . the court . . . [to know] that on February 4th I did see a small window for me to have a good time incarcerated in jail and not under any . . . supervision and used Oxycodone. And I think I should go back and get some more help to a treatment facility. That's it.

On cross-examination, the Defendant agreed his burglary and theft convictions were crimes of dishonesty. He agreed he used Oxycodone when in confinement but denied using drugs after his first drug screen. He denied consistently using Oxycodone when he was in jail and after his release. He said it was "probably not possible" that he used drugs after his first drug screen but did not recall it. He said that he "was trying to walk the line" after the first drug screen. He initially denied "being around drugs" after his release but said it was possible he saw drugs but did not recall it. He later agreed that he was "around drugs" between the second and third drug screens but denied he was concerned his third drug screen might show a positive result.

The trial court found that that when the Defendant was released from confinement, he tested positive for controlled substances on February 4, 2017, and admitted using controlled substances during his incarceration. The court found that on February 22, the Defendant's drug screen showed a diluted specimen, which the court found was "another reason for the probation to be revoked." The court stated that "there's good reason for the probation to be revoked" based upon the February 4 and February 21 drug screens. The court stated that Ms. Davis gave the Defendant "another opportunity" by administering a third drug screen five months after the February drug screens and that the results were abnormally diluted. The court determined that the Defendant violated the conditions of his probation.

The trial court noted that although the Defendant testified that he did not have a drug problem and had not been using drugs, he also testified that he wanted to enter a long-term treatment program. The court considered the Defendant's testimony and his convictions for crimes of dishonesty and discredited his testimony. The court found that the Defendant violated the law during his six-month confinement and that Ms. Davis had given the Defendant opportunities to comply with the conditions of his release. The court ordered the

Defendant to serve the remainder of his eight-year sentence in confinement. The court stated that if the Defendant found a treatment program to accept him, it would consider a motion, with the State's agreement, to allow him to seek treatment rather than serve his sentence in confinement. No additional proceedings appear in the record. This appeal followed.

The Defendant contends that the evidence is insufficient to support the trial court's revoking his probation and that the court abused its discretion by ordering him to serve his sentence in confinement. The State responds that the trial court properly revoked the Defendant's probation and ordered his sentence into execution. We agree with the State.

Our supreme court has concluded that a trial court's decision to revoke a defendant's probation "will not be disturbed on appeal unless . . . there has been an abuse of discretion." *State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991) (citing *State v. Williamson*, 619 S.W.2d 145, 146 (Tenn. Crim. App. 1981)). An abuse of discretion has been established when the "record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978). When a trial court finds by a preponderance of the evidence that a defendant has violated the conditions of probation, the court "shall have the right . . . to revoke the probation." T.C.A. § 40-35-311(e)(1) (2014). After revoking a defendant's probation, the trial court may return a defendant to probation with modified conditions as necessary, extend the period of probation by no more than two years, order a period of confinement, or order the defendant's sentence into execution as originally entered. T.C.A. §§ 40-35-308(a), (c) (2014), -310 (2014). "In probation revocation hearings, the credibility of witnesses is for the determination of the trial judge." *Carver v. State*, 570 S.W.2d 872, 875 (Tenn. Crim. App. 1978) (citing *Bledsoe v. State*, 378 S.W.2d 811, 814 (Tenn. 1965)).

The record reflects that the probation violation report and warrants alleged that the Defendant had violated the conditions of his release by testing positive for controlled substances on February 4 and by providing diluted samples at two subsequent drug screens. Ms. Davis testified that the Defendant admitted smoking marijuana and consuming pills after the trial court ordered the six-month confinement period. The February 4 drug screen showed positive results for Oxycodone. Although the Defendant denied using drugs after the first drug screen and testified he did not know why the two subsequent samples were diluted, the trial court discredited the Defendant's testimony. The record supports the trial court's finding that the Defendant violated the conditions of his probation by using controlled substances.

Because we have concluded that the record supports the trial court's findings that the Defendant violated the conditions of his probation, we likewise conclude that the court did not abuse its discretion by revoking the Defendant's probation. *See* T.C.A. § 40-35-

-4-

311(e)(1). Once the court revoked the Defendant's probation, it had the authority to order the Defendant to serve his sentence in confinement. *See id*. §§ 40-35-308(a), (c), -310. The Defendant is not entitled to relief.

Based on the foregoing and the record as a whole, we affirm the judgment of the trial court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE